Joyce A. MOORE

v.

**KIMBERLY–CLARK CORP.**

Civ. A. No. 86–0560.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Dec. 23, 1987.

Hal V. Lyons, Shreveport, La., for plaintiff.

Donna G. Klein, John V. Baus and John J. Weigel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant.

MEMORANDUM RULING

STAGG, Chief Judge.

Joyce A. Moore allegedly contracted toxic shock syndrome ("TSS") after using Kotex Security Tampons and/or Kotex Stick

Tampons, both being products of the defendant corporation, Kimberly–Clark Corporation ("Kimberly–Clark"). Action was commenced in the First Judicial District Court, Caddo Parish, Louisiana on February 18, 1986. Kimberly–Clark removed the action to this court on March 17, 1986. Currently pending is a motion for summary judgment filed by Kimberly–Clark.

Kimberly–Clark contends that it has strictly complied with the user labeling requirements of 21 C.F.R. § 801.430 by placing the proper warning on the outside of the tampon package and on the package insert. Kimberly–Clark believes it is entitled to judgment in its favor because of this strict compliance with the federal regulations. It asserts that the federal regulations pre-empt any other safety requirements that plaintiff may allege under state law. Moore does not contest the fact that Kimberly–Clark has complied with the federal regulations. She argues that the regulations set a minimum standard, and compliance is not dispositive under state law if the plaintiff can show that a reasonable manufacturer would have required further warning.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). In the usual case, the party who seeks summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any

fact material to the resolution of the motion. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

Once the moving party presents its evidence, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. To require a judge or jury to resolve the parties' differing versions of the truth at trial, the moving party must present sufficient evidence supporting the claimed factual dispute. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). A dispute over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson,* 106 S.Ct. at 2510.

Kimberly–Clark urges that Moore's tort claims are preempted by the Medical Device Amendments of 1976 (Amendments) to the Federal Food & Drug Cosmetic Act of 1938, 21 U.S.C. §§ 360c through 360ee, and the Food & Drug Administration ("FDA") regulations promulgated thereunder. Kimberly–Clark contends that 21 C.F.R. § 801.430 expressly confers upon the FDA exclusive authority to establish labeling standards for tampons.

■ The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., Art. VI cl. 2, requires the court to examine Congressional intent. Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed. 2d 604 (1977). The Supreme Court has stated in *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982):

> Absent explicit pre-emptive language, Congress' intent to supersede law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for

the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

■ Furthermore, state law may be nullified to the extent that it actually conflicts with federal law, even where Congress has not completely displaced state regulation in a specific area. This occurs when compliance with both federal and state regulation is a physical impossibility, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

■ State law may be pre-empted by federal regulations as well as by federal statutes:

Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily. *United States v. Shimer*, 367 U.S. 374, 381–382, 81 S.Ct. 1554, 1559–1560, 6 L.Ed.2d 908 (1961). When the administrator promulgates regulations intended to pre-empt state law, the court's inquiry is similarly limited:

If [h]is choice represents a reasonable accommodation of conflict policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned. *Id.*, at 383, 81 S.Ct., at 1560.

See also *Blum v. Bacon*, 457 U.S. 132, 145–146, 102 S.Ct. 2355, 2363–2364, 72 L.Ed.2d 728 (1982); *Ridgway v. Ridgway*, 454 U.S. [46], at 57, 102 S.Ct. [49], at 56 [70 L.Ed.2d 39 (1981)] (regulations, must not be "unreasonable, unauthorized, or inconsistent with" the underlying statute); *Free v. Bland*, 369 U.S. [663], at 668, 82 S.Ct. [1089], at 1093 [8 L.Ed.2d 180 (1962)].

*Fidelity Federal*, 458 U.S. at 153–54, 102 S.Ct. at 3022–23.

■ Kimberly–Clark's pre-emption argument is based on the amendments enacted by Congress on May 28, 1976. These amendments were enacted to protect public health by assuring that medical devices are safe and effective. The tampons involved in this case are within the scope of these amendments.

Title 21 U.S.C. § 360k provides in part:

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

(Subsection (b) provides for the grant of exemptions from subsection (a) by the Secretary.) This statute expressly precludes states from establishing requirements different from or in addition to those promulgated by the FDA. The regulations also reveal an intent to preclude any contrary state regulation, regardless of the source of law. Section 808.1(b) of 21 C.F.R. states:

[Section 360k(a)] of the [Amendments] contains special provisions governing the regulation of devices by States and localities. That section prescribes a general rule that after May 28, 1976, no State or political subdivision of a State may establish or continue in effect any requirement with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation, or *court*

*decision* ), which is different from, or in addition to, any requirement applicable to such device under any provision of the act and which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the act.

(Emphasis added.) Clearly, Congress, through 21 U.S.C. § 360k(a) and the FDA, through 21 C.F.R. § 808.1(b), expressly excluded the states from the area of establishing labeling standards for medical devices.

In 1980, the Secretary promulgated regulations classifying tampons as Class II medical devices. *See* 21 C.F.R. §§ 884.5460 and 884.5470. The Amendments provide that the Secretary may by regulation establish a performance standard for a Class II device. 21 U.S.C. § 360d(a)(1). The statute continues:

A performance standard established under this section for a device shall, where appropriate, require the use and prescribe the form and content of labeling for the proper installation, maintenance, operation, and use of the device.

21 U.S.C. § 360d(a)(2)(C).

User labeling for menstrual tampons was adopted by the FDA on June 22, 1982. The regulation provides:

(a) This section applies to scented or scented deodorized menstrual tampons as identified in § 884.5460 and unscented menstrual tampons as identified in § 884.5470 of this chapter.

(b) Available data show that toxic shock syndrome (TSS), a rare but serious and sometimes fatal disease, is associated with the use of menstrual tampons. To protect the public and to minimize the serious adverse effects of TSS, menstrual tampons shall be labeled as set forth in paragraphs (c) and (d) of this section.

(c) If the information specified in paragraph (d) of this section is to be included as a package insert, the following alert statement shall appear prominently and legibly on the package label:

ATTENTION: Tampons are associated with Toxic Shock Syndrome (TSS). TSS is a rare but serious disease that may cause death. Read and save the enclosed information.

(d) The consumer information required by this section shall appear prominently and legibly, in a package insert or on the package, in terms understandable by the layperson and shall include statements concerning:

(1)(i) Warning signs of TSS, e.g., sudden fever (usually 102° or more) and vomiting, diarrhea, fainting or near fainting when standing up, dizziness, or a rash that looks like a sunburn:

(ii) What to do if these or other signs of TSS appear, including the need to remove the tampon at once and seek medical attention immediately;

(2) The risk of TSS to all women using tampons during their menstrual period, especially the reported higher risks to women under 30 years of age and teenage girls, the estimated incidence of TSS of 6 to 17 per 100,000 menstruating women and girls per year, and the risk of death from contracting TSS;

(3) The advisability of using tampons with the minimum absorbency needed to control menstrual flow;

(4) Avoiding the risk of getting tampon-associated TSS by not using tampons, and possibly reducing the risk of getting TSS by alternating tampon use with sanitary napkin use during menstrual periods; and

(5) The need to seek medical attention before again using tampons if TSS warning signs have occurred in the past, or if women have any questions about TSS or tampon use.

(e) Any menstrual tampon dispensed by a vending machine is exempt from the requirements of this section.

(f) Any menstrual tampon that is not labeled as required by this section and that is initially introduced or initially delivered for introduction into commerce after December 20, 1982, is misbranded pursuant to sections 502(a) and 201(n) of the act.

21 C.F.R. § 801.430. Through the classification of tampons as Class II medical devices and by promulgating regulations pre-

scribing proper labeling standards, Congress and the FDA have effectively preempted state tort law regulation in this area.

The plaintiff does not contend that the federal regulations were not complied with. On the contrary, she argues that the FDA standards are minimum, citing *O'Gilvie v. International Playtex, Inc.*, 609 F.Supp. 817 (D.C.Kan.1985), *aff'd in part, rev'd in part*, 821 F.2d 1438 (10th Cir.1987). However, in that case the pre-emption argument was never raised. The pre-emption argument has now been raised in a number of district courts around the country. Different courts have held pre-emption applied in this area. *See Stewart v. International Playtex Inc.*, 672 F.Supp. 907 (D.S.C.1987); *Ignace v. Playtex Family Products Inc.*, no. 86–C–480–C (W.D.Wis. July 28, 1987); *Edmondson v. International Playtex Inc.*, 85–306R (N.D.Ga. June 16, 1987). This court believes these decisions are correct statements of the law.

The plaintiff also relies on the Louisiana Court of Appeals case of *Miller v. Upjohn Co.*, 465 So.2d 42 (La.App. 1st Cir.) *cert. denied*, 467 So.2d 533 (1985). As the defendant has astutely pointed out, reliance on this case is also displaced. The court in *Miller* stated that the defendants were not required to warn of side affects until the FDA approved the labeling. However, it held that the jury could have found that the defendants were tardy in applying for the warning label. In this case, plaintiff's cause of action arises from post-warning use of the defendant's product. Plaintiff states in her deposition that she knew of the warning about TSS and its association with tampon use. It is uncontested that at the time of her use of the product in March of 1985, Kimberly–Clark was complying with the labeling requirements promulgated by the FDA. Kimberly–Clark's activities prior to the labeling regulations are not in question. *Miller* does not aid the plaintiff.

For the foregoing reasons, the court believes plaintiff's state law action is preempted by federal law. Since plaintiff has evidenced no genuine issue of material fact as to the defendant's compliance with the federal regulations, summary judgment must be GRANTED to the defendant in this matter.

An Order consistent with the terms of this Memorandum Ruling shall issue herewith.