724 F.Supp. 288 (1988)
Laura MEYER and Herbert Meyer, Plaintiffs,
v.
INTERNATIONAL PLAYTEX, INC.; ABC Company (a fictitious name); and XYZ Company (a fictitious name), Defendants.
Civ. A. No. 86-1430.
United States District Court, D. New Jersey.
December 1, 1988.
*289 Minichino & Mautone by Sara A. Friedman, West Orange, N.J., for plaintiffs.
Priestley, McGuirl & Wachenfeld by Charles K. Meuse, Newark, N.J., for defendant Intern. Playtex, Inc.

OPINION
BISSELL, District Judge.
This matter arises before the Court on the basis of a motion by defendant International Playtex, Inc. (Playtex) for partial summary judgment. Defendant moves to dismiss Counts 5 and 6 of the complaint by plaintiff Meyer on the grounds that these claims involve state common law tort claims that are preempted by the Federal Drug and Cosmetic Act, 21 U.S.C. § 360k(a) and 21 C.F.R. § 808.1(b).

FACTS AND PROCEDURAL BACKGROUND
Plaintiffs Laura and Herbert Meyer's complaint, as amended, states that Laura Meyer began using Playtex tampons when she started her menses on or about March 3, 1984. Approximately one month later, while Meyer allegedly was using Playtex tampons, she became acutely ill and was diagnosed as suffering from Toxic Shock *290 Syndrome. (Compl., Ct. 1, ¶¶ 4, 5). As a result of her illness, Laura Meyer has allegedly suffered substantial pain and mental anguish, has required medical care, and has been prevented from engaging in her normal activities. She claims she will continue to suffer such personal and economic losses in the future. (Compl., Ct. 1, ¶ 7).
Plaintiffs allege in Count 1 that International Playtex, Inc. and others were negligent in the manufacturing, marketing, distribution and sale of defective tampons. In Counts 2 and 3 plaintiffs allege that Playtex breached implied and express warranties that its tampons were safe and fit for their ordinary purposes. Count 4 alleges that Playtex made false representations as to the fitness of Playtex tampons for their ordinary and intended use. Counts 5 and 6 allege that Playtex is liable under theories of negligence and strict liability for failing to provide adequate warnings about risks associated with tampon use both before and after distribution of the tampons plaintiff used. Count 7 asserts that Playtex is strictly liable for selling allegedly defectively-designed tampons. Count 8 claims that Playtex negligently failed to manufacture, market, distribute and sell more safely-designed tampons and that Playtex is strictly liable for not doing so. Finally, Count 9 contains Herbert Meyer's per quod claim for medical expenses he has paid on Laura Meyer's behalf.

DISCUSSION

Federal Preemption of Tampons Warnings
(Based on Ignace v. International Playtex, Inc., No. 86-C-430-C (W.D.Wis.1987))
Defendant urges that plaintiffs' tort claims in strict liability and negligence, insofar as they allege a failure to warn, are preempted by the 1976 Medical Device Amendments, (21 U.S.C. §§ 360c to 360dd) to the Federal Food, Drug & Cosmetic Act of 1938 (the Amendments), and Food & Drug Administration (FDA) regulations promulgated thereunder. Defendant contends that the Amendments and the regulations, specifically 21 C.F.R. § 801.430, expressly confer upon the FDA the exclusive authority to establish labeling standards for tampons.
Congressional power to preempt state law is rooted in the supremacy clause of article VI of the Constitution. Preemption can occur in a variety of ways. First, Congress has the power to preempt state law by so stating in express terms. Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Absent explicit preemptive language, Congress' intent to supersede state law altogether may be inferred either because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject" or because "the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose." Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).
Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). See also Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta, 458 U.S. at 154-59, 102 S.Ct. at 3022-26.
The Supreme Court has repeatedly held, moreover, that state laws can be preempted by federal regulations as well as by federal statutes. See Hillsborough County v. Automated Medical Labs, 471 U.S. *291 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (citing cases). Thus,
Federal regulations have no less preemptive effect than federal statutes. Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily. United States v. Shimer, 367 U.S. 374, 381-82 [81 S.Ct. 1554, 1559-60, 6 L.Ed.2d 908] (1961). When the administrator promulgates regulations intended to preempt state law, the court's inquiry is similarly limited:
If [h]is choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned. Id., at 383 [81 S.Ct. at 1560].
Fidelity Federal, 458 U.S. at 153-54, 102 S.Ct. at 3022-23.
In this case, defendant's preemption argument is bottomed first on the Medical Device Amendments, enacted by the United States Congress on May 28, 1976. It was observed by the Senate Committee reporting on the Amendments that they sought to balance two important goals. They were designed to encourage the research and development of increasingly sophisticated and critically important medical devices and at the same time to ensure "that the [Federal Drug Administration] has the proper authority to regulate that process so that Americans are not put at risk from the use of unsafe and ineffective medical devices." 1976 U.S.Code Cong. & Admin. News 1070, 1071.
The Amendments established three categories of medical devices and authorized the FDA, after receiving a recommendation from a panel of experts, to classify all such devices. 21 U.S.C. § 360c(b)(1). After receiving the panel's recommendation regarding a particular device, the Secretary is required to publish the panel's recommendation, and a proposed regulation classifying the device, in the Federal Register. Upon reviewing comments from interested persons, the Secretary is further required, by regulation, to classify the device. 21 U.S.C. § 360c(d)(1). In February 1980, the Secretary promulgated regulations classifying scented and unscented tampons as Class II medical devices. 21 C.F.R. §§ 884.5460 and 884.5470.
The Amendments further provide that "The Secretary may by regulation, promulgated in accordance with this section, establish a performance standard for a Class II device." 21 U.S.C. § 360d(a)(1). That standard, the statute continues, "shall, where appropriate, require the use and prescribe the form and content of labeling for the proper installation, maintenance, operation, and use of the device." 21 U.S.C. § 360d(a)(2)(C) (emphasis added). The preclusive effect of such labeling and other requirements is discussed in § 360k:
State and local requirements respecting devices
(a) General rule
Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement 
(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.
On June 22, 1982, the FDA adopted 21 C.F.R. § 801.430, entitled "User labeling for menstrual tampons." It states as follows:
(a) This section applies to scented or scented deodorized menstrual tampons as identified in § 884.5460 and unscented menstrual tampons as identified in § 884.5470 of this chapter.
(b) Available data show that toxic shock syndrome (TSS), a rare but serious and sometimes fatal disease, is associated with the use of menstrual tampons. To protect the public and to minimize the serious adverse effects of TSS, menstrual *292 tampons shall be labeled as set forth in paragraphs (c) and (d) of this section.

(c) If the information specified in paragraph (d) of this section is to be included as a package insert, the following alert statement shall appear prominently and legibly on the package Label:
ATTENTION: Tampons are associated with Toxic Shock Syndrome (TSS). TSS is a rare but serious disease that may cause death. Read and save the enclosed information.
(d) The consumer information required by this section shall appear prominently and legibly, in a package insert or on the package, in terms understandable by the layperson and shall include statements concerning:
(1)(i) Warning signs of TSS, e.g., sudden fever (usually 102 or more) and vomiting, diarrhea, fainting or near fainting when standing up, dizziness, or a rash that looks like a sunburn;
(ii) What to do if these or other signs of TSS appear, including the need to remove the tampon at once and seek medical attention immediately.
(2) The risk of TSS to all women using tampons during their menstrual period, especially the reported higher risks to women under 30 years of age and teenage girls, the estimated incidence of TSS of 6 to 17 per 100,000 menstruating women and girls per year, and the risk of death from contracting TSS;
(3) The advisability of using tampons with the minimum absorbency needed to control menstrual flow;
(4) Avoiding the risk of getting tampon-associated TSS by not using tampons, and possibly reducing the risk of getting TSS by alternating tampon use with sanitary napkin use during menstrual periods; and
(5) The need to seek medical attention before again using tampons if TSS warning signs have occurred in the past, or if women have any questions about TSS or tampon use.
(e) Any menstrual tampon dispensed by a vending machine is exempt from the requirements of this section.
(f) Any menstrual tampon that is not labeled as required by this section and that is initially introduced or initially delivered for introduction into commerce after December 20, 1982, is misbranded pursuant to sections 502(a) and 201(n) of the act.
(Emphasis added).
The regulations also reveal an intent to preclude any contrary state regulation, regardless of the source of the law. Section 808.1(b) of 21 C.F.R. states:
[Section 360k(a)] of the [Amendments] contains special provisions governing the regulation of devices by States and localities. That section prescribes a general rule that after May 28, 1976, no State or political subdivision of a State may establish or continue in effect any requirement with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation, or court decision), which is different from, or in addition to, any requirement applicable to such device under any provision of the act and which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the act.
(Emphasis added).
It is plain that Congress, through 21 U.S.C. § 360k(a), and the FDA, through 21 C.F.R. § 808.1(b), expressly excluded the states from the area of establishing labeling standards for medical devices, including tampons. See Jones v. Rath Packing Co., 430 U.S. at 530-31, 97 S.Ct. at 1312-13 (Court found a provision of the Federal Meat Inspection Act prohibiting the imposition of "[m]arking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under" the Act to be an explicit preemption provision). Cf. Hillsborough County v. Automated Medical Labs, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (regulation contained no expression of intent to displace state law, *293 and FDA issued a statement indicating it did not intend to usurp state authority).
It is equally clear that these federal provisions apply to bar plaintiffs' claims based on a theory of inadequate warning to the extent the standard is derived from state tort law. It is well established that the preemption doctrine applies to supersede common law claims brought in state court. The Supreme Court has reasoned that
[R]egulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme.
San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 780-81, 3 L.Ed.2d 775 (1959). See also Chicago & N.W. Trans. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 326-27, 101 S.Ct. 1124, 1134-35, 67 L.Ed.2d 258 (1981); Vanover v. Ford Motor Co., 632 F.Supp. 1095, 1096 (E.D.Mo.1986). The FDA regulations confirm the breadth of preemption with respect to labeling, as 21 C.F.R. § 801.1(b) specifically says that any state requirement having the force and effect of law, including court decisions, must give way to federal law. The FDA has specifically stated what must appear on tampon boxes and inserts in order to comply with federal law and reserved the power to approve or disapprove the language. Under state law, the jury could presumably evaluate defendant's labeling on a reasonableness standard and could find the labeling to be inadequate, even if it were in complete compliance with the regulations.
As stated earlier in this opinion, plaintiffs do not dispute the foregoing rationale for preemption by federally published tampon safety regulations of any state standards (having the force of law) that differ from or add to the federal regulations. This Court holds that Counts 5 and 6 of the complaint are preempted expressly by 21 U.S.C. § 360k(a) and 21 C.F.R. § 808.1(b). Accord, Rinehart v. International Playtex, Inc., 688 F.Supp. 475 (S.D.Ind.1988); Moore v. Kimberly-Clark Corp., 676 F.Supp. 731 (W.D.La.1987); Stewart v. International Playtex, Inc., 672 F.Supp. 907 (D.S.C.1987).
However, the Court's inquiry does not end at this point.

The Summary Judgment Motion
It does not necessarily follow from preemption of Counts 5 and 6 that defendant is entitled to summary judgment. Plaintiffs claim that defendant failed to give adequate or proper notice or warning. Nothing in the federal regulation of tampon safety warnings precludes plaintiffs' state tort remedy if they can show that defendant's warnings were not in compliance with the applicable federal standards. It is possible that plaintiffs will find it difficult finally to persuade a jury of defendant's non-compliance. However, defendant must meet a difficult burden in a summary judgment proceeding to merit complete dismissal of the claims.
Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party and any reasonable doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. Continental Insurance Co. v. Bodie, 682 F.2d 436, 438 (3d Cir.1982). The moving party has the burden of establishing that there exists no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court recently stated that in applying the criteria for granting summary judgment,
the judge must ask himself not whether he thinks the evidence unmistakably favors *294 one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).
In the case at bar, defendant must demonstrate that as a matter of law its labels and inserts comply with the appropriate federal regulations for tampon safety warnings cited earlier in this opinion. Defendant does present a statement from an "Investigator" dated December 21, 1982 that the warning insert and carton labeling on the type and size tampon package apparently used by the plaintiff contained all the information required by the Federal Register. (Defendant's Memo, Exh. J). The investigator is not identified as an FDA employee on his report form. However, an affidavit by an employee of defendant Playtex does establish the investigator as an employee of the FDA. Irwin Butensky, Vice-President of Playtex for Research and Development identifies the investigator as a spokesman for the FDA. (Butensky Aff., ¶¶ 9, 10; Exh. D). This is evidence, if not dispositive, of compliance. The approval by the FDA was for warnings in effect on December 21, 1982. The Butensky affidavit establishes that the packaging and warnings in effect for the various types of Playtex tampons available on the market were used from August 1982 through August 1985. The transcript of plaintiff Laura Meyer's deposition establishes that her mother purchased the allegedly offending box of tampons within a few days before she was taken ill in March 1984. (Meyer Dep. at 82; Defendant's Reply Memo, Exh. 1).
Plaintiff has requested evidence of the FDA approval of the warnings provided to her but does not controvert it. Equally, there is no issue of material fact as to the prominence of the warnings provided, for plaintiff Laura Meyer acknowledged that she saw the warning both on the package and in the insert. Beyond this undisputed evidence of compliance, the Court finds that, as a matter of law, the actual warnings provided by Playtex so correspond in meaning and clarity of language with the FDA specifications in 21 C.F.R. § 801.430(d) as to evince defendant's complete compliance with the regulation. (Butensky Aff., Exh. A; Defendant's Reply Memo at 5-7).
Plaintiff has alleged that the part of the warning suggesting that the likelihood of contracting Toxic Shock Syndrome may be reduced by alternating tampon use with sanitary napkin use is not clearly understandable by the user. These allegations are unconvincing. Defendant Playtex has used virtually the exact wording provided by the FDA's regulation (21 C.F.R. § 801.430(d)(9)), and that phraseology is sufficient, as a matter of law.
Therefore, defendant has met its burden of showing that no genuine issue of material fact remains as to its compliance with the warnings required by the FDA regulations on the tampons bought by plaintiff. Therefore, defendant's motion for summary judgment as to Counts 5 and 6 of the complaint is granted.