**Jill Annette KRAUSE, Plaintiff,**

v.

**KIMBERLY–CLARK CORPORATION, Defendant.**

**No. L89–30066 CA1.**

United States District Court, W.D. Michigan.

Jan. 17, 1990.

Aryon Greydanus, Lansing, Mich., for plaintiff.

Richard A. Kitch, Kitch, Saurbier, Drutchas, Wagner, et al., Lansing, Mich., Rodney E. VanAusdal, Williams & Montgomery, Ltd., Chicago, Ill., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Plaintiff Jill Annette Krause filed the present three-count action in the Ingham County Circuit Court, State of Michigan, against defendant Kimberly–Clark Corporation alleging negligence, failure to provide an adequate warning, and breach of implied warranties. Plaintiff's action arises out of claims that while using defendant's KOTEX Security Super Tampons, she suffered toxic shock syndrome. Defendant removed the action to this Court on the basis of diversity jurisdiction. Presently pending before the Court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated, defendant's motion is granted in part and denied in part.

## FACTS

Plaintiff Jill Annette Krause alleges that she developed toxic shock syndrome ("TSS") as a result of her use of KOTEX Security Super Tampons ("KOTEX Tampons"). Defendant Kimberly–Clark Corporation is the manufacturer of KOTEX Tampons. Plaintiff alleges that on or about August 7, 1988, she began using KOTEX Tampons. On August 10–11, 1988 plaintiff allegedly suffered from symptoms of TSS. On August 12, 1988, plaintiff was admitted to the hospital and was hospitalized until August 17, 1988. Plaintiff alleges that she continues to suffer from pain allegedly resulting from the TSS caused by her use of KOTEX Tampons.

In May of 1980, the Center for Disease Control first indicated an association between the use of tampons and TSS. *See* 45 Fed.Reg. 69840 (Oct. 21, 1980); Underhill Affidavit ¶ 3. Thus, in October 1980, Kimberly–Clark mailed letters to physicians and public health agencies warning of the association. *Id.* at ¶ 4. Kimberly–Clark began placing shelf warnings in retail stores beginning in November 1980. *Id.* at ¶ 5. In addition, all KOTEX Tampon boxes leaving Kimberly–Clark's possession after October 31, 1980, included a cautionary statement warning of the danger and symptoms of TSS and its possible association with tampon use. *Id.* at ¶ 6.

On June 22, 1982, the Federal Food and Drug Administration ("FDA") promulgated labeling requirements for all tampon boxes entering the stream of commerce after December 20, 1982. *See* 21 U.S.C. §§ 360c–360k; 21 C.F.R. § 801.430; 47 Fed.Reg. 26982, 26982–90 (June 22, 1982). Kimberly–Clark complied with the FDA requirements at all times after December 20, 1982, by either displaying an alert statement on the package label and including consumer information in a package insert or by displaying both the alert statement and consumer information on the package label. Underhill Affidavit ¶ 7. Kimberly–Clark's alert statement provides:

ATTENTION: Tampons are associated with Toxic Shock Syndrome (TSS). TSS is a rare but serious disease that may

cause death. Read and save the enclosed information.

Kimberly–Clark's consumer information provides:

## ATTENTION—IMPORTANT INFORMATION ABOUT TOXIC SHOCK SYNDROME (TSS)

Sudden fever (usually 102° or more), vomiting, diarrhea, fainting or near fainting when standing up, dizziness, or a rash that looks like a sunburn can all be warning signs of a rare but serious illness, Toxic Shock Syndrome ("TSS"). This illness can cause death. Should these symptoms occur, discontinue use and consult a physician immediately. You should also consult a physician before using tampons if you have had TSS warning signs in the past.

Women using tampons during their menstrual period are susceptible to the risk of contracting TSS. The incidence of TSS is relatively low, estimated to be 6 to 17 per 100,000 menstruating women and girls per year. The reported incidence of TSS is higher among teenage girls and women under 30 years of age.

We suggest that you use the minimum absorbency tampon needed to control your menstrual flow. If you believe that on a particular day you have a light to medium flow, we suggest that you use KOTEX® SECURITY® Regular size tampons. If you believe that on a particular day you have a heavy flow, we suggest you use KOTEX SECURITY Super size tampons.

You may avoid the risk of getting tampon-associated TSS by not using tampons, and possibly reduce the risk by alternating tampon use with the use of KOTEX® Maxi or Mini Pads, KOTEX® LIGHTDAYS® PantiLiners, or other sanitary napkins during your menstrual period. Please consult a physician if you have any further questions about TSS or tampon use.

Defendant has moved for summary judgment arguing that plaintiff's state law tort claims are preempted by federal law and that there is no genuine issue of material fact that it complied with the FDA requirements. Defendant has supported its motion for summary judgment with the affidavit of Robert A. Underhill, defendant's vice president of research. As of the date of this Opinion, plaintiff has not filed a response.[1]

## STANDARD OF REVIEW

Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son*, 668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the non-moving party, a reasonable factfinder could return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). Once this has been done, the non-moving party must come forward with specific facts showing that there is a material issue of fact on an issue which the non-moving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. If the non-moving party fails to respond, summary judgment, if appropriate, shall be en-

---

1. Defendant filed its motion for summary judgment on November 1, 1989. Plaintiff's response was due on November 15, 1989. Local Court Rule 29(a); Fed.R.Civ.P. 6(a). On December 7, 1989, the Court noted that plaintiff's response had not been filed, so the Court took the matter under advisement and ordered the parties to submit all briefs pertaining to this matter by December 21, 1989.

tered against the non-moving party. Fed. R.Civ.P. 56(e).

## ANALYSIS

### I. FEDERAL PREEMPTION

■ The Supremacy Clause of the Constitution requires invalidation of state laws that interfere with or are contrary to federal law. U.S. Const. art. VI, cl. 2. Preemption may be express where Congress explicitly prohibits state regulation. *See, e.g., Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); *Ohio Manufacturers' Association v. City of Akron*, 801 F.2d 824, 827–28 (6th Cir.1986), *cert. denied*, 484 U.S. 801, 108 S.Ct. 44, 98 L.Ed.2d 9 (1987). In the absence of express preemption, preemption can be implied "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *California Federal Savings & Loan Association v. Guerra*, 479 U.S. 272, 280–81, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230–31, 67 S.Ct. 1146, 1152–53, 91 L.Ed. 1447 (1947). Preemption may also occur where state law conflicts with federal law even if Congress has not completely displaced state regulation. *Guerra*, 479 U.S. at 281, 107 S.Ct. at 689; *Jones*, 430 U.S. at 525–26, 97 S.Ct. at 1309–10; *Roysdon v. R.J. Reynolds Tobacco Co.*, 849 F.2d 230, 233–34 (6th Cir.1988).

"State laws can be pre-empted by federal regulations as well as by federal statutes." *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985); *Fidelity Federal Savings & Loan Association v. De la Cuesta*, 458 U.S. 141, 153–54, 102 S.Ct. 3014, 3022–23, 73 L.Ed.2d 664 (1982). The ultimate question is congressional intent underlying the regulatory scheme. *Hillsborough County*, 471 U.S. at 714, 105 S.Ct. at 2375; *De la Cuesta*, 458 U.S. at 152, 102 S.Ct. at 3022. Further, "[w]here ... the field [such as state regulation of health and safety] that Congress is said to have pre-empted has been traditionally occupied by the States, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Hillsborough County*, 471 U.S. at 715, 105 S.Ct. at 2376 (quoting *Rice*, 331 U.S. at 230, 67 S.Ct. at 1152). Finally, "pre-emption is not to be lightly presumed." *Guerra*, 479 U.S. at 281, 107 S.Ct. at 689.

### II. FEDERAL REGULATION OF MEDICAL DEVICES

Federal Regulations classify tampons as Class II medical devices regulated under the Medical Device Amendments of 1976 ("MDA") to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, 21 C.F.R. §§ 884.5460, 884.5470. *See also* 21 U.S.C. § 360c (classification of devices); 21 C.F.R. § 860 (classification procedures). As a Class II medical device, tampons are subject to specified performance standards enacted by the Secretary of Health and Human Services "to provide reasonable assurance of [their] safe and effective performance." 21 U.S.C. § 360d. Devising a performance standard includes "where appropriate, requir[ing] the use and prescrib[ing] the form and content of labeling for proper installation, maintenance, operation, and use of the device." 21 U.S.C. § 360d(a)(2)(C).

Section 521(a) of the MDA expressly provides that:

no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). However, Section 521(b) allows a state to apply for an exemption under limited circumstances. 21 U.S.C. § 360k(b). *See also* 21 C.F.R. § 808 (exemption procedures).

The regulations clarify Section 521(a), noting that "any requirement" includes requirements "having the force and effect of law (whether established by statute, ordinance, regulation, or court decision)." 21 C.F.R. § 808.1(b). Further, the regulations specifically except from preemption by the MDA certain state requirements with respect to a device. 21 C.F.R. § 808.1(d). For example, "[g]enerally, section 521(a) does not preempt a State or local requirement prohibiting the manufacture of adulterated or misbranded devices. Where, however, such a prohibition has the effect of establishing a substantive requirement for a specific device, e.g., a specific labeling requirement, then the prohibition will be preempted if the requirement is different from, or in addition to, a Federal requirement established under the act." 21 C.F.R. § 808.1(d)(6)(ii).

On June 22, 1982, the FDA adopted labeling requirements for tampons because "[a]vailable data show[s] that toxic shock syndrome (TSS), a rare but serious and sometimes fatal disease, is associated with the use of menstrual tampons." 21 C.F.R. § 801.430(b). The regulations require tampon manufacturers either to include TSS information in a package insert with a brief statement on the outer package label calling attention to the insert or to include all the TSS information on the package. 21 C.F.R. § 801.430(c), (d). *See also* 47 Fed. Reg. 26982, 26982–90 (June 22, 1982) (discussing comments received regarding TSS warning labeling prior to issuance of final regulation). Thus, "[t]o protect the public and to minimize the serious adverse effects of TSS, menstrual tampons shall be labeled" with the following information:

(c) If the information specified in paragraph (d) of this section is to be included as a package insert, the following alert statement shall appear prominently and legibly on the package label:

ATTENTION: Tampons are associated with Toxic Shock Syndrome (TSS). TSS is a rare but serious disease that may cause death. Read and save the enclosed information.

(d) The consumer information required by this section shall appear prominently and legibly, in a package insert or on the package, in terms understandable by the layperson and shall include statements concerning:

(1)(i) Warning signs of TSS, e.g., sudden fever (usually 102° or more) and vomiting, diarrhea, fainting or near fainting when standing up, dizziness, or a rash that looks like a sunburn;

(ii) What to do if these or other signs of TSS appear, including the need to remove the tampon at once and seek medical attention immediately;

(2) The risk of TSS to all women using tampons during their menstrual period, especially the reported higher risks to women under 30 years of age and teenage girls, the estimated incidence of TSS of 6 to 17 per 100,000 menstruating women and girls per year, and the risk of death from contracting TSS;

(3) The advisability of using tampons with the minimum absorbency needed to control menstrual flow;

(4) Avoiding the risk of getting tampon-associated TSS by not using tampons, and possibly reducing the risk of getting TSS by alternating tampon use with sanitary napkin use during menstrual periods; and

(5) The need to seek medical attention before again using tampons if TSS warning signs have occurred in the past, or if women have any questions about TSS or tampon use.

21 C.F.R. § 801.430(c), (d).

### III. APPLICATION

■ Defendant argues that summary judgment is appropriate because the federal regulations preempt plaintiff's state law claims and there is no issue of fact regarding its compliance with the federal regulations. After reviewing the applicable statutes and regulations, the Court finds that state law claims are preempted only to the extent that they challenge the adequacy of warning or the labeling on tampon packages. *See Moore v. Kimberly–Clark Corp.*, 867 F.2d 243, 247 (5th Cir.1989); *Lindquist v. Tambrands, Inc.*, 721 F.Supp. 1058, 1063 (D.Minn.1989); *Cornelison v.*

*Tambrands, Inc.,* 710 F.Supp. 706, 709 (D.Minn.1989); *Rinehart v. International Playtex, Inc.,* 688 F.Supp. 475, 477 (S.D. Ind.1988). The Court finds no indication that Congress or the FDA intended to preempt all state law tort claims. Thus, the Court concludes that only Count 2, plaintiff's failure to provide an adequate warning claim, is preempted.

Since the Court finds that plaintiff's failure to warn claim is preempted, the Court next must review the record to determine whether there is any genuine issue of material fact with regard to defendant's compliance with the federal labeling regulations. As noted above, the federal labeling regulations require tampon manufacturers either to include the specified TSS information in a package insert with a brief statement on the outer package label calling attention to the insert or to include all the TSS information on the package. 21 C.F.R. § 801.430(c), (d). Defendant has provided an affidavit and exhibits in order to show its compliance with the regulations. The Court has examined defendant's exhibits and finds that the warnings and information provided on or inserted in defendant's tampon packages comply with the FDA specifications thereby precluding a finding that defendant did not comply with the regulations.

Since defendant has met its initial responsibility of establishing the absence of any material issue of fact for trial and since plaintiff has not responded at all, plaintiff has not met her burden of identifying specific material issues of fact which still exist. Further, the Court, on its own review of defendant's label and the labeling requirements, finds no genuine issue of fact concerning defendant's compliance with federal labeling regulations. Accordingly, there being no genuine issue of material fact with respect to defendant's compliance with federal labeling regulations, defendant's motion for summary judgment with respect to Count 2 is granted as a matter of law.

Consistent with its determination that only state law claims which challenge the adequacy of information provided with tampon packages is preempted, the Court concludes that plaintiff's claims of negligence and breach of implied warranty are not preempted. Based on the apparent lack of medical certainty available with regard to the cause of TSS, the Court notes that plaintiff may have a difficult time establishing and proving her negligence and breach of warranty claims. Nonetheless, since the Court has determined that such claims are not preempted, summary judgment is not appropriate at this time. Accordingly, defendant's motion for summary judgment as to Counts 1 and 3 of plaintiff's complaint is denied.

### CONCLUSION

For the reasons stated, defendant Kimberly–Clark Corporation's motion for summary judgment is granted in part and denied in part. The Court grants defendant's motion with respect to plaintiff's failure to adequately warn claim (Count 2). The Court denies defendant's motion with respect to plaintiff's negligence (Count 1) and breach of implied warranties (Count 3) claims.