**Ray F. STEWART, Personal Representative of the Estate of Phyllis Ann Stewart, Plaintiff,**

v.

**INTERNATIONAL PLAYTEX, INC., Defendant.**

Civ. A. 9:86–2817–17.

United States District Court, D. South Carolina, Greenwood Division.

Oct. 8, 1987.

Barney O. Smith, Jr., Greenville, S.C., for plaintiff.

William M. Grant, Jr., John B. McLeod, Haynsworth, Marion, McKay & Guerard, Greenville, S.C., William H. Robinson, Jr., Stephan F. Andrews, Wright, Robinson, McCannon & Tatum, P.C., Richmond, Va., for defendant.

## ORDER

JOSEPH FLETCHER ANDERSON, Jr., District Judge.

This matter is before this court on defendant's motion for partial summary judgment. The motion has been granted.

The plaintiff brings this action alleging his decedent contracted toxic shock syndrome (TSS) and subsequently died of the disease as a result of using Playtex tampons, defendant's product. The complaint lists six causes of action, the plaintiff relying on negligence, warranty and strict liability theories of recovery due to defendant's alleged failure to adequately warn plaintiff's decedent and alleged defective design and manufacture of defendant's product.

Through its motion defendant sought partial summary judgment as to the applicable standard with regard to the labeling of the product. Defendant alleged any state-imposed standard was expressly preempted by the federal regulatory scheme dealing generally with medical devices, and specifically with the labeling of tampons. The motion was heard by this court on September 22, 1987, and as stated from the bench, defendant's motion is granted. This order will more fully explain this court's reasoning.

The doctrine of preemption has its roots in the Supremacy Clause, United States Constitution, Art. VI, Cl. 2, and in general terms dictates that federal law is the "supreme law of the land," rendering invalid any state law which interferes with or is contrary to a valid federal law. Preemption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure." *See, e.g., Fidelity Federal S & L Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

The Supremacy Clause enables Congress to address problems of national dimension by enacting exclusive, comprehensive federal legislation supplanting and barring similar state authority. The preemption doctrine has long been recognized as essential to the prevention of paramount state authority in those areas where Congress has chosen to specifically preclude state regulation or to occupy a given field. *Lockheed Air Terminal, Inc. v. City of Burbank,* 457 F.2d 667 (9th Cir.1972), *aff'd,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973).

For preemption purposes, the federal law under analysis in any given situation is not limited to federal statutes. It is well-established that Congress may authorize federal administrative agencies to preempt state law by the promulgation of administrative regulations. *See e.g., Burbank v. Lockheed Air Terminal,* 411 U.S. 624, 93 S.Ct.

1854, 36 L.Ed.2d 547 (1973). Once promulgated "federal regulations have no less preemptive effect than federal statutes." *Fidelity Savings & Loan* 458 U.S. at 153–154, 102 S.Ct. at 3022, *citing United States v. Shimer,* 367 U.S. 374, 381–382, 81 S.Ct. 1554, 1559–60, 6 L.Ed.2d 908 (1961).

In a particular instance, express preemption arises when a federal regulatory body specifically addresses a particular commodity, prescribes certain requirements, and enacts explicit preemptive language.

21 U.S.C. § 360k was enacted by Congress as part of the Medical Device Amendments of 1976. The amendments were designed to "protect the public health" by assuring that medical devices are "safe and effective." Section 360k was specifically enacted for the purpose of achieving that goal on a uniform, national basis—not on a state by state basis—and it states in part:

> No state ... may establish ... with respect to a device ... *any requirement* ... which is different from, or in addition to, any requirement applicable under this chapter to the device ... which relates to the safety and effectiveness of the device.

21 U.S.C. § 360k (emphasis added).

■ This statute, which *expressly* precludes the individual states from establishing requirements different from or in addition to those promulgated by the FDA, reveals on its face the congressional objective to prohibit, by the doctrine of express preemption, the proliferation of multiple, diverse, state by state device requirements. Plaintiff's common law tort claim alleging "inadequate warnings" seeks, by definition, to establish a tort labeling requirement which could be different from or in addition to the existing and applicable FDA requirement. Therefore, because the following prerequisites are met, the preemption language in § 360k applies.

1. Tampons are Class II medical devices, intended for human use. 21 C.F.R., Section 884.5460 and 21 C.F.R. Section 884.5470.

2. Following almost two years (October 1980 to June 1982) of notice, study and comment with a complete analysis and review of *all* scientific evidence relating to tampons and TSS, the FDA promulgated a regulation requiring that specific labeling addressing TSS accompany all tampon products. 21 C.F.R. Section 801.430. This regulation became effective on December 20, 1982.

3. The tampon labeling regulation not only relates to the safety and effectiveness of tampons, but is in fact designed to assure that the product is adequately labeled to assure safe use. 21 C.F.R. Section 801.430(b); 47 Fed.Reg. 26982 (1982).

Once it is determined that Section 360k is applicable to a device, 21 C.F.R. Section 808.1(b) commands:

> No state or political subdivision of a state may establish or continue in effect *any requirement* with respect to a medical device intended for human use *having the force and effect of law* (whether established by statute, ordinance, regulation, *or court decision*) which is different from, or in addition to, any requirement applicable to such device ... which relates to the safety and effectiveness of the device....

21 C.F.R. § 808.1(b) (emphasis added).

■ The plaintiff here argues South Carolina tort law, which plaintiff hopes will impose a more stringent labeling standard on defendant, is not a "requirement" as used in the regulation. Therefore plaintiff maintains the express preemption declaration in § 360k is not applicable in these circumstances. Despite plaintiff's assertions to the contrary, the term "requirement" as used in § 360k has been expressly defined by the FDA as *any* standard "having the force and effect of law (whether established by statute, ordinance, regulation *or court decision*)." 21 C.F.R. § 808.1(b) (emphasis added). On its face, this definition encompasses the actions of a court of law entering judgment against the defendant for compensatory and punitive damages based upon "inadequate warnings". The FDA has therefore determined that a state's common law—to the extent it attempts to regulate matters already addressed by the FDA—shall be considered a

**910**

§ 360k "requirement". South Carolina tort law is, therefore not exempt from § 360k.

Plaintiff advances additional arguments in support of his position. First, he maintains that under the principles set forth in *Silkwood v. Kerr–McGee*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) the doctrine of preemption cannot abrogate a state created tort remedy. The question, however, is not the preemption of a *remedy*, but whether the federal government can impose upon a manufacturer a binding, uniform standard of conduct. The remedy is available to plaintiff, but compliance with federal law protects the defendant from the vagaries of each state's judicial system.

▇ Second, plaintiff sets forth several grounds for his argument that the federal regulations impose only a minimum standard of conduct. Plaintiff maintains because a state can apply for an exemption to the preemption mandate, this proves the regulations set forth minimum levels of compliance. This is not the case. Until a state has applied for exemption under § 521(b) of the Act and a finding is made under 21 C.F.R. 808.1(c), the requirements are the only ones to be imposed. Plaintiff also relies on *O'Gilvie v. Playtex*, 821 F.2d 1438 (10th Cir.1987), in which the court of appeals upheld the district court's jury instruction in a TSS case as being a proper statement of the law. The judge instructed the jury that compliance with the federal regulation was evidence of due care, and if it thought a reasonable manufacturer would have taken additional precautions, the defendant was negligent. *Id.* at 1442. But *O'Gilvie* is easily distinguishable, in that the preemption argument was never raised. *O'Gilvie* presented the question of duty and compliance with an enacted statute as evidence of a sufficient level of conduct. The case at bar deals with a federal statute enacted to expressly preclude an individual state from requiring anything further.

Plaintiff also relies on *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C.Cir. 1984) in which the court found Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) requirements to be mere minimum guidelines, which left room for the states to impose additional requirements for the use of the product. But the statutory language of the Medical Device Amendments is different from regulations dealing with, for instance, pesticide labeling. FIFRA contains a savings clause allowing state regulation or use of a federally registered pesticide, whereas no such language is found in the Medical Device Amendments.

## CONCLUSION

The labeling mandate prescribed in 21 C.F.R. Section 801.430 sets forth the only standard for tampon labeling with respect to TSS. It is a specific requirement applicable to a specific device which, in the opinion of the FDA, relates directly to the safety and effectiveness of tampons. Plaintiff's cause of action based upon Playtex's labeling is therefore preempted. However, the granting of partial summary judgment does not in any way effect the question of defendant's compliance which remains for later determination.

For the foregoing reasons, the defendant's motion for partial summary judgment on the inadequacy of warnings is hereby granted.

IT IS SO ORDERED.