Krystal H. RINEHART, Plaintiff,

v.

INTERNATIONAL PLAYTEX, INC.,
and Hook–Super X, Inc.,
Defendants.

No. IP 87–196–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 18, 1988.

**476**

Richard D. Schreiber, Indianapolis, Ind., Mark E. Hutton, Wichita, Kan., for plaintiff.

Julie Michaelis, Indianapolis, Ind., Lucie Adele Baker, Richmond, Va., for defendants.

## ENTRY

DILLIN, District Judge.

This cause is before the Court on a motion by defendants for summary judgment and a motion by plaintiff for Rule 11 sanctions. For the following reasons, both motions are denied.

### Background

In this diversity action, plaintiff alleges injuries from toxic shock syndrome, which she states she contracted from using menstrual tampons manufactured by defendant International Playtex, Inc. ("Playtex"), and sold by defendant Hook–Super X, Inc. Plaintiff seeks compensatory and punitive damages based on theories of negligence and strict products liability.

Defendants have filed a motion for summary judgment, arguing that plaintiff's claims are preempted by provisions of the federal Medical Device Amendments of 1976, 21 U.S.C. § 360c *et seq.*, that Playtex tampons are not defective as a matter of law, and that plaintiff incurred the risk. Plaintiff has moved for Rule 11 sanctions based on defendants' failure to advise the Court of a recent, relevant Ohio decision.

### Discussion

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The burden of establishing the lack of any genuine issue of material fact is upon the movant, and all doubts are to be resolved against him. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1218 (7th Cir.1984).

Defendants argue plaintiff's claims of inadequate warning and defective design with respect to defendants' product are preempted by the Medical Device Amendments of 1976, 21 U.S.C. § 360c *et seq.* Defendants contend that because Playtex fully complied with all applicable federal regulations of tampons, summary judgment should be granted as a matter of law.

Federal preemption under the Supremacy Clause can be either express or implied. Express preemption occurs where "Congress ... explicitly define[s] the extent to which it intends to pre-empt state law." *Michigan Canners & Freezers Ass'n v. Agricultural Mktg. & Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed. 2d 399, 406 (1984). Where Congress is silent, implied preemption will be found

[i]f Congress evidences an intent to occupy a given field.... If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, ... or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

*Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443, 452 (1984) (citations omitted); *see also Michigan Canners,* 467 U.S. at 469, 104 S.Ct. at 2523, 81 L.Ed.2d at 406. Moreover, "state laws can be preempted by federal regulations as well as by federal statutes." *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985).

■ In 1976, Congress enacted amendments to the Food, Drug and Cosmetic Act to protect the public health and safety by providing for federal regulation of medical devices. *See* 1976 U.S.Code Cong. & Ad-

min.News 1070. As part of the federal regulatory scheme, Congress declared:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). To implement this section, the Food and Drug Administration ("FDA") promulgated the following regulation:

Section 521(a) of the act [21 U.S.C. § 360k(a)] contains special provisions governing the regulation of devices by States and localities. That section prescribes a general rule that ... no State or political subdivision of a State may establish or continue in effect any requirement with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation *or court decision*), which is different from, or in addition to, any requirement applicable to such device under any provision of the act and which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the act.

21 C.F.R. § 808.1(b) (emphasis added). Menstrual tampons are a "medical device" covered by the act, for which the FDA has specified labeling and warning requirements with respect to toxic shock syndrome. *See id.* §§ 801.430, 884.5460–.5470.

Defendants argue that these provisions preclude a jury in a state tort suit from applying any different or higher standard to Playtex tampons and that plaintiff's claims that defendants' warning statement was inadequate and that the product was defectively designed are therefore preempted as a matter of law. Plaintiff argues the federal statute applies only to state legisla-

tive or administrative regulation and that Congress never intended to preempt product liability suits under state law.

As the Court sees it, the issue here is whether a jury imposing a tampon labeling or warning standard different from the federal standard constitutes the establishment of a state requirement within the meaning of 21 U.S.C. § 360k(a). The FDA has already addressed this question by declaring, in 21 C.F.R. § 801.1(b), that the state requirements referred to in the statute include those established by court decision. Such administrative interpretation of a statute is entitled to deference unless it clearly conflicts with the statute. *See United States v. Shimer,* 367 U.S. 374, 381–83, 81 S.Ct. 1554, 1559–60, 6 L.Ed.2d 908, 914–15 (1961). Moreover, a jury's award of damages in a state law tort suit can be regulatory in the sense that defendants are threatened with liability if they fail to conform to whatever standard the jury applied. *See Silkwood,* 464 U.S. at 256, 104 S.Ct. at 625, 78 L.Ed.2d at 457; *see also Palmer v. Liggett Group, Inc.,* 825 F.2d 620, 627–28 (1st Cir.1987) (finding standard imposed by jury in state tort suit is a "state law requirement"). Therefore, the Court finds that 21 U.S.C. § 360k(a) and 21 C.F.R. § 808.1(b) expressly preempt the imposition in a state law tort suit of labeling or warning standards for tampons that are different from or in addition to those established by the FDA. *See Moore v. Kimberly–Clark Corp.,* 676 F.Supp. 731 (W.D.La.1987); *Stewart v. International Playtex, Inc.,* 672 F.Supp. 907 (D.S.C.1987) (both finding preemption with respect to tampon warning statements based on similar analysis).

█ This finding however does not mean, as defendants assert, that all of plaintiff's tort claims fail as a matter of law. The Court's analysis merely establishes that in this litigation, the standard to be applied to the warning statements on defendants' tampon box and package insert is that set out in the federal regulations and that neither the Court nor the jury may impose additional warning requirements. Section 801.430 of 21 C.F.R. re-

quires that tampon warning statements contain certain information "in terms understandable to the layperson," but does not prescribe specific language. Manufacturers are free "to develop their own wording." 47 Fed.Reg. 26,985 (1982). The Court finds there is still a question of fact for the jury as to whether Playtex's packaging complied with the federal requirement. *See Stewart,* 672 F.Supp. at 910 (although federal law establishes tampon warning standard, fact question remains as to whether defendant complied with federal standard). Therefore, summary judgment on the issue of the adequacy of defendants' warning must be denied.

■ Defendants also argue that plaintiff's claims of design defect are preempted by the federal tampon warning requirements. However, 21 C.F.R. § 808.1(d) provides:

State or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State ... requirements ... different from, or in addition to, the specific Food and Drug Administration requirements.

According to the FDA, "the scope of preemption is limited to instances where there are specific FDA requirements applicable to a particular device or class of devices.... The phrase 'or in addition to, any requirement applicable under this Act to the device' means that an FDA requirement must exist before preemption can occur." 43 Fed.Reg. 18,662 (1978). The only federal requirements regarding tampons are those prescribing certain labeling and warning statements. There are no federal regulations on tampon design or composition. Therefore, because there is no "specific [federal] counterpart regulation" with which a jury decision on tampon design could conflict, the Court finds that the federal Medical Device Amendments do not preempt plaintiff's claim of design defect.

■ Turning to plaintiff's state law tort claims, defendants argue that because of the warning statement on the package insert, any danger of toxic shock syndrome due to tampon use was patent, and that when the risk of harm is thus open and obvious, the product is not defective as a matter of law. In strict products liability cases, Indiana does apply the "open and obvious danger rule," which provides that when the danger of a product is readily apparent to the "ordinary consumer" with "ordinary knowledge," the product is not considered defective and the manufacturer has no duty to warn. *Bemis Co. v. Rubush,* 427 N.E.2d 1058, 1061–62 (Ind.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); *Ragsdale v. K–Mart Corp.,* 468 N.E.2d 524, 526–27 (Ind.Ct.App. 1984); *see also Phelps v. Sherwood Medical Indus.,* 836 F.2d 296, 303–05 (7th Cir. 1987) (Indiana law). However, this rule applies to products, such as lawnmower blades, *see Ragsdale,* 468 N.E.2d at 526–27, not to warning statements.

Defendants cite no cases holding that a warning statement somehow converts a latent danger into one that is open and obvious. Indeed, under Indiana law, the result of a dangerous condition being "open and obvious" is that a manufacturer has no duty to warn. *See Phelps,* 836 F.2d at 303–05; *Bemis,* 427 N.E.2d at 1061; *Ragsdale,* 468 N.E.2d at 527. Thus, under the facts of this case, defendants are in effect arguing that the presence of the warning statement on the tampons means they had no duty to warn, which is a non sequitur. The Court finds, to the contrary, that because the alleged risk of toxic shock syndrome from tampon use is not open and obvious, but latent, defendants had a duty to warn and, indeed, this is why the FDA has imposed a duty to warn. Accordingly, the Court finds that the open and obvious danger rule does not apply to this case and summary judgment on this basis must be denied.

■ Defendants also contend that summary judgment should be granted because plaintiff voluntarily incurred the risk of toxic shock syndrome. With respect to the concept of incurred risk in strict products

liability cases, Indiana Code § 33–1–1.5–4(b)(1) provides:

It is a defense that the user or consumer bringing the action knew of the defect and was aware of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it.

Even if, as defendants assert, plaintiff read the tampon package insert on toxic shock syndrome and was aware of the risk, defendants offer no explanation of what was unreasonable about plaintiff's subsequent use of the product, unless defendants mean to imply that after having read the warning, it was unreasonable for plaintiff to use defendants' tampons at all. If so, one wonders as to the reasonableness of defendants in advertising and selling such a product. The Court finds there is a question of disputed fact as to the reasonableness of plaintiff's use of defendants' product, which precludes summary judgment on plaintiff's strict liability claim on the basis of incurred risk.

With respect to incurred risk as a defense to plaintiff's negligence claim, Indiana law defines incurred risk as follows:

"It involves a mental state of venturousness on the part of the actor, and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk. By definition ... the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has *actual* knowledge."

*Beckett v. Clinton Prairie School Corp.,* 504 N.E.2d 552, 554 (Ind.1987) (emphasis in original) (quoting *Power v. Brodie,* 460 N.E.2d 1241, 1243 (Ind.Ct.App.1984)). Because the Court finds there is a fact question for the jury as to whether plaintiff's conduct in this case satisfies these criteria, summary judgment on this issue must be denied.

Plaintiff has moved for Rule 11 sanctions against defendants because defendants did not advise the Court that an Ohio federal district court recently denied a similar motion for summary judgment based on preemption. Because, as defendants note, the Ohio decision was issued after defendants filed their summary judgment motion in this court and because defendants' expectation—that plaintiff's co-counsel, who was also co-counsel in the Ohio case, would be aware of the Ohio decision and include it in plaintiff's response brief to this Court—was reasonable, plaintiff's motion for sanctions is denied.

For the foregoing reasons, defendants' motion for summary judgment and plaintiff's motion for sanctions are hereby denied.