**Cynthia Jo LINDQUIST and Stanley Lindquist, Plaintiffs,**

v.

**TAMBRANDS, INC., d/b/a Tampax Brand and Wal–Mart Stores, Inc., Defendants.**

Civ. No. 4–88–443.

United States District Court, D. Minnesota, Fourth Division.

Sept. 21, 1989.

Stephen J. Smith, Smith & Tollefson, Owatonna, Minn., for plaintiffs.

Michael S. Ryan, Shelley A. Simmering and Susan D. Hall, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, Minn. (Roger E. Podesta, Joseph P. Moodhe and Daniel J. Goldstein, Debevoise & Plimpton, New York City, of counsel), for defendants.

MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the motion of defendant Tambrands, Inc. for

partial summary judgment. The motion will be granted.

## I. INTRODUCTION

Plaintiff Cynthia Jo Lindquist developed toxic shock syndrome (TSS) following her use of Tampax-brand tampons purchased from Wal–Mart Stores, Inc.[1] Tampax-brand tampons are manufactured by Tambrands, Inc. (Tampax). Plaintiff and her husband have sued Tampax and Wal–Mart under Minnesota law on theories of strict liability, negligence, breach of express and implied warranties, misrepresentation and consumer fraud and, under federal law, for violation of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310.

Tampax now moves for partial summary judgment on the ground that federal law has preempted state law warning claims. The first issue is whether state law warning claims are preempted by the federal statutes and regulations concerning medical devices. The second issue, reached only because the Court decides that the warning claims are preempted, is whether plaintiffs have established a genuine issue concerning Tampax's compliance with the federal regulations.

## II. FEDERAL REGULATION OF TAMPON LABELING

■ Tampons are classified as Class II medical devices and regulated under the Medical Device Amendments (MDA) to the Food, Drug and Cosmetic Act. 21 U.S.C. §§ 360c; 21 C.F.R. §§ 884.5460, 884.5470. In enacting the MDA in 1976, Congress intended to assure "that Americans are not put at risk from the use of unsafe and ineffective medical devices." S.Rep. No. 33, 94th Cong., 2d Sess. 2 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 1070, 1071. The drafters of the MDA were concerned that "interstate commerce would be unduly burdened" if states imposed "a substantial number of differing requirements" for medical devices. H.R.Rep. No. 853, 94th Cong. 2d Sess. 45 (1976).

Section 521(a) of the MDA, 21 U.S.C. § 360k, expressly prohibits a state from adopting any requirement applicable to medical devices "different from, or in addition to," any requirement applicable under the MDA. The statute provides:

(a) General rule

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirements applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). Subsection (b) provides authority for the FDA, upon application by a state, to exempt state law requirements from preemption.

The regulations implementing section 521(a) are published at 21 C.F.R. § 808. These regulations interpret section 521(A) to preempt state law requirements established by "court decisions."

[Section 521(a) ] prescribes a general rule that after May 28, 1976, no State or political subdivision of a State may establish or continue in effect any requirement with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation, or *court decision* ), which is different from, or in addition to, any requirement applicable to such device under any provision of the act which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the act.

21 C.F.R. § 808.1(b) (emphasis added). The regulations also state that federal law only preempts those state or local regulations "applicable to a device" and for which there is a specific federal counterpart.

State and local requirements are preempted only when the Food and Drug

---

1. The defendant has assumed that these facts are true for the purpose of this motion only.

Memorandum of Defendant Tambrands, Inc. at 3 n. 1.

Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements. There are other State and local requirements that affect devices that are not preempted by section 521(a) of the act because they are not "requirements applicable to a device" within the meaning of section 521(a) of the act.

21 C.F.R. § 808.1(d). A list of examples of State or local requirements that are not regarded as preempted by section 521(a) is provided. None of these examples discusses the relationship between the regulations and state tort law.

Manufacturers of medical devices are required to secure premarket approval for their products. 21 C.F.R. § 814.20. The premarket approval process includes an evaluation of the labeling of the device. 21 C.F.R. § 814.20(b)(10). The manufacturer is under a continuing duty to determine whether the device, including its labeling, is safe and effective. 21 C.F.R. § 814.39(a). Before making a change affecting the safety or effectiveness of the device, a manufacturer must file a supplement to its premarket approval application and secure the approval for the change. 21 C.F.R. § 814.39(a). An exception is made for changes which enhance the safety of the device. Such changes may be put into effect prior to the receipt of FDA approval. 21 C.F.R. § 814.39(d). The regulation specifically identifies three types of labeling changes as examples of the changes that can be put into effect without prior approval.

(i) Labeling changes that add or strengthen a contraindication, warning, precaution, or information about an adverse reaction.

(ii) Labeling changes that add or strengthen an instruction that is intended to enhance the safe use of the device.

(iii) Labeling changes that delete misleading, false, or unsupported indications.

21 C.F.R. § 814.39(d)(2). Although it is not clear when these changes are required to be made, in other contexts the FDA has required the changes to be made at the "earliest possible time." See 21 C.F.R. § 514.8(d) (concerning drugs for use in animals).

In 1982, in response to the discovered association between TSS and tampon use, the FDA adopted labeling requirements for tampons. The regulations required the following consumer information to appear "prominently and legibly in a package insert or on the package in terms understandable by the layperson[:]"

(1) the warning signs of TSS and what to do if the warning signs appear;

(2) the statistical risk of TSS to women using tampons;

(3) the advisability of using tampons with the minimum absorbency needed to control menstrual flow;

(4) the potential for avoiding the risk of getting tampon-associated TSS by not using tampons and the potential for "possibly reducing" the risk of getting TSS by alternating tampon use with sanitary napkin use during menstrual periods;

(5) the need to seek medical attention "before again using tampons if TSS warning signs have occurred in the past, or if women have any questions about TSS or tampon use."

21 C.F.R. § 801.430(d). If, as is true in most cases, the above information is provided in a package insert, then the following "alert statement" must appear "prominently and legibly" on the package label:

ATTENTION: Tampons are associated with Toxic Shock Syndrome (TSS). TSS is a rare but serious disease that may cause death. Read and save the enclosed information.

21 C.F.R. § 801.430(c).

III. WHETHER STATE LAW WARNING CLAIMS ARE PREEMPTED BY THE FEDERAL REGULATIONS GOVERNING TAMPONS

The doctrine of preemption is based upon Article VI, Clause 2 of the Constitution

which establishes the supremacy of federal law. Federal law will preempt state law in either of two ways.

> If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted. If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

*Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (citations omitted). State law may be preempted by federal regulations as well as federal statutes. *Hillsborough County v. Automated Medical Laboratories*, 471 U.S. 707, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). State common law is as subject to preemption as state statutes. *Sperry v. Florida*, 373 U.S. 379, 403, 83 S.Ct. 1322, 1335, 10 L.Ed.2d 428 (1963); *San Diego Building Trade Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) ("[e]ven the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme").

Under our federal system of government, any analysis of preemption "starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). This is especially true where health and safety matters are concerned. The regulation of health and safety has traditionally been the central concern of state government. Therefore, in this area, the courts will hold federal law to preempt state law only if that was " 'the clear and manifest purpose of Congress.' " *Hillsborough County*, 105 S.Ct. at 2376, *quoting Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Absent such a showing, it must be presumed that "state and local regulation of health and safety matters can constitutionally coexist with federal regulation." *Hillsborough County*, 105 S.Ct. at 2376.

Section 521(a) of the MDA expressly preempts any state law requirement "different from, or in addition to," any requirement applicable under the MDA. The regulations promulgated under the MDA include labeling requirements for tampons. Clearly, a state could not impose different or additional tampon labeling requirements through legislation or administrative rulemaking. *See* 21 C.F.R. § 808.1(d)(6)(ii) (state or local requirement prohibiting the manufacture of adulterated or misbranded devices not preempted unless the requirement has the effect of establishing "a substantive requirement for a specific device, e.g., a specific labeling requirement").

The question raised in this case is whether the preemptive effect of section 521(a) extends to claims under state tort law. Congress can and has made express reference to common law claims in preemption provisions. *See, e.g.*, 17 U.S.C. § 301(a) (federal copyright law preempts equivalent rights "under the common law or statutes of any State"); 12 U.S.C. § 1715z–10(e) (mortgages or loans insured under the National Housing Act are not subject to "any State constitution, statute, court decree, common law, or rule or public policy" limiting the amount of interest that can be charged or requiring a minimum amortization of principal).

Congress did not expressly preempt common law claims with section 521(a). There is, moreover, nothing in the legislative history of the MDA indicating that Congress intended section 521(a) to preempt the application of the remedies available under state tort law.

The regulations interpreting section 521(a) do state that "court decisions" establishing state law requirements applicable to a device are preempted. 21 C.F.R. § 808.1(b).

> [Section 521(a) ] prescribes a general rule that ... no State ... may establish or continue in effect any requirement with respect to a medical device intended for

human use having the force and effect of law (whether established by statute, ordinance, regulation or *court decision*), which is different from, or in addition to, any requirement applicable to such device under any provision of the act.... (Emphasis added.) Section 808.1(b) does not unambiguously interpret the MDA as preempting standards developed under the common law. The reference to "court decisions" in section 808.1(b) could be interpreted as referring only to judge-made law, *i.e.*, judicial interpretations of state constitutions, statutes, regulations or of the common law. For example, as suggested in 21 C.F.R. § 808.1(d)(6)(ii), if a state statute prohibiting the manufacture of adulterated or misbranded devices were interpreted by a court to impose on medical device manufacturers a requirement inconsistent with federal requirements for medical devices, that would be preempted. This can be distinguished from a jury's factual determination that a device, which complies with the federal regulations, runs afoul of the state's general tort law standards. *See* 21 C.F.R. § 808.1(d)(1) (regulations do not preempt state "requirements of general applicability where the purpose of the requirement relates ... to other products in addition to devices"). The administrative record does not shed any light on this question. *See* 43 Fed.Reg. 18661–655 (1978).

Yet of the eighteen courts that have considered this question,[2] seventeen have either implicitly or expliticly reached the conclusion that a jury verdict in a tort suit under state law is a requirement for the purposes of section 521(a) and therefore preempted. *See, e.g., Rinehart v. International Playtex, Inc.,* 688 F.Supp. 475 (S.D. Ind.1988); *Meyer v. International Playtex, Inc.,* 724 F.Supp. 288, 293 (D.N.J.1988); *Ignace v. International Playtex, Inc.,* No. 86–C–480–C, slip op. at 2 (W.D.Wis. Aug. 19, 1987). These decisions are consistent with the decisions of several federal appeals courts and the Supreme Court of Minnesota holding that the imposition of state tort standards for adequate warning would impermissibly obstruct the purposes of the federal Cigarette Labeling and Advertising Act. *See, e.g., Roysdon v. R.J. Reynolds Tobacco Co.,* 849 F.2d 230, 235 (6th Cir.1988) ("'views of a single state, indeed, perhaps of a single jury in a single state'" cannot be permitted to supersede national standards articulated by Congress), *quoting Palmer v. Liggett Group, Inc.,* 825 F.2d 620, 626 (1st Cir.1987). *Accord, Pennington v. Vistron Corp.,* 876 F.2d 414 (5th Cir.1989); *Palmer, supra; Stephen v. American Brands, Inc.,* 825 F.2d 312 (11th Cir.1987); *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181 (3d Cir. 1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct.

---

**2.** The courts which have held that the federal labeling requirements for tampons do preempt state law warning claims include the United States Court of Appeals for the Fifth Circuit and the Honorable Edward J. Devitt of this district. *Moore v. Kimberly–Clark Corp.,* 867 F.2d 243 (5th Cir.1989), *aff'g in relevant part Moore v. Kimberly–Clark Corp.,* 676 F.Supp. 731 (W.D.La. 1987); *LaVetter v. International Playtex, Inc.,* 706 F.Supp. 722 (D.Ariz.1988); *Edmondson v. International Playtex, Inc.,* 678 F.Supp. 1571 (N.D.Ga.1987); *Rinehart v. International Playtex, Inc.,* 688 F.Supp. 475 (S.D.Ind.1988); *Jones v. Tambrands, Inc.,* No. CO870102 (N.D.Iowa, Dec. 5, 1988); *Stucker v. International Playtex, Inc.,* No. C–87–0440–L(B) (W.D.Ky. Feb. 26, 1988) (appeal dismissed for lack of appellate jurisdiction Jan. 24, 1989); *Needham v. International Playtex, Inc.,* No. 87–152 (E.D.Ky. Oct. 25, 1988); *Cornelison v. Tambrands, Inc.,* 710 F.Supp. 706 (D.Minn.1989); *Meyer v. International Playtex, Inc.,* 724 F.Supp. 288 (D.N.J. 1988); *Briggs v. International Playtex, Inc.,* No. 86–C–540–E (N.D.Ok. Apr. 7, 1988); *Gil-*

bert v. Kimberly–Clark Corp., No. 87–C–470–E (N.D.Ok. Nov. 4, 1988); *Stewart v. International Playtex, Inc.,* 672 F.Supp. 907 (D.S.C. 1987); *Remer v. Tampax, Inc.,* No. 578755 (San Diego County Superior Court, California May 10, 1989); *Aase v. Tambrands, Inc.,* No. 68108 (Kootenai County District Court, Idaho Aug. 24, 1989); *Craig v. Kimberly–Clark Corp.,* No. 86–2–14780–2 (Kings County Superior Court, Washington Sept. 15, 1988); *Berger v. Johnson & Johnson Products, Inc.,* No. 86–2–01249–3 (Yakima County Superior Court, Washington Mar. 14, 1989).

The single court which held that the labeling requirements do not preempt state law warning claims was also the first court to have confronted the question, *Musatko v. International Playtex, Inc.,* No. 85–C–1540, slip op. (E.D.Wis. May 14, 1987). The rationale of *Musatko,* that the FDA's TSS warning regulations do not rise to the level of a "requirement" within the meaning of section 521(a), has not been accepted by any other court.

907, 93 L.Ed.2d 857 (1987); *Forster v. R.J. Reynolds Tobacco Co.*, 437 N.W.2d 655, 659 (Minn.1989) (a jury's finding of liability based upon state standards of adequacy "constitutes a state-imposed regulatory scheme superimposed on the federal scheme").

> Of course,
> [t]he critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law.

*Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986). Generally, preemption of state law in the area of health and safety is proper only if Congress has made manifest its intent to preempt. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). The decision that Congress intended to preempt the application of state tort standards wherever the FDA has adopted specific requirements for medical devices largely hinges on a reading of the FDA regulations interpreting the preemption statute. As noted, those regulations are susceptible to more than one interpretation and nothing in either the legislative history or the administrative record suggests that the question was directly considered.

In this regard, the medical device cases are very similar to the cigarette cases. The Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.*, prescribes the warning which must be placed on each package of cigarettes. 15 U.S.C. § 1333. It also contains a preemption provision which stated, in essence, that "[n]o statement relating to smoking and health, other than the statement required [by this act], shall be required on any cigarette package." 15 U.S.C. § 1334. Relying both on that preemption provision and on the statement of purpose found at 15 U.S.C. § 1331, the courts have found that the act "represents a carefully drawn balance between the purposes of warning the public of the hazards of cigarette smoking and protecting the interests of national economy." *Cipollone*, 789 F.2d at 187. From

that carefully wrought balance is inferred a legislative intent to preempt state law warning claims. *Pennington*, 876 F.2d at 421; *Roysdon*, 849 F.2d at 234–35; *Palmer*, 825 F.2d at 626; *Cipollone, supra* at 187; *Forster*, 437 N.W.2d at 658–59.

The MDA embodies Congress' effort to balance its concern for the safety and effectiveness of medical devices with its concern that interstate commerce not be "unduly burdened" and its interest in encouraging the research and development of new and more sophisticated medical devices. H.R.Rep. No. 853, 94th Cong., 2d Sess. 45 (1976); S.Rep. No. 33, 94th Cong., 2d Sess. 6 (1976); *see also* Executive Order 12291, § 1(b). The FDA's promulgation of regulations which establish a uniform national standard accomplishes this balance. It is of particular note that the purpose of the FDA's tampon labeling requirements is "to advise women of the dangers associated with the use of tampons so that they can make an informed decision on whether and how to use the product." 47 Fed.Reg. at 26986. This is the same purpose served by the common law warning standard. Prosser and Keeton, *The Law of Torts*, § 96 at 685 (5th ed. 1984).

Without a doubt, jury verdicts awarding money damages can substantially impair the congressional desire for uniform national standards. As the Minnesota Supreme Court recently observed, when a jury "reevaluates the federal duty in terms of a state standard of adequacy and assesses tort damages against a manufacturer found to be wanting," the jury's determination "constitutes a state-imposed regulatory scheme superimposed on the federal scheme." *Forster*, 437 N.W.2d at 659. *See also, Palmer*, 825 F.2d at 626. Such a result would defy Congress' effort to prevent "a substantial number of differing requirements applicable to a medical device ... imposed by jurisdictions other than the Federal government." H.R.Rep. No. 853 at 45. For that reason, the Court holds that the federal labeling requirements for tampons preempt state law warning claims.

## IV. WHETHER A GENUINE ISSUE EXISTS CONCERNING COMPLIANCE WITH FEDERAL REGULATIONS

■ The second issue raised by Tampax's motion is whether plaintiffs have established a genuine issue of fact concerning Tampax's compliance with federal labeling regulations. Tampax argues that there can be no genuine dispute concerning its compliance with the regulations.

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *AgriStor Leasing*, 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Plaintiffs claim to have put in issue two fact questions concerning Tampax's compliance with federal regulations. First, plaintiffs claim that there is a factual dispute about whether the "alert statement" appears "prominently" on the package as the regulations require. 21 C.F.R. § 801.430(c). Second, plaintiffs claim that a factual dispute exists about whether the information contained on the insert is "understandable by the layperson." 21 C.F.R. § 801.430(d). More specifically, plaintiffs argue that structure and phrasing of the statement on the package insert portrays TSS as less serious than it actually is. In support of their claims, plaintiffs have provided the Court with copies of the tampon package and package insert at issue and with the statement of Cynthia Lindquist that the warning was neither "explicit enough nor evident enough" to support their claims. Affidavit of Cynthia Jo Lindquist, par. 15.

Since 1982, more than 14 billion Tampax tampons have been manufactured and sold without any suggestion by the FDA of lack of compliance. Affidavit of Clayton L. Thomas, par. 6. At least four courts have granted summary judgment on the issue of compliance after considering the precise warning at issue here. *Cornelison v. Tambrands, Inc.*, 710 F.Supp. 706, 709 (D.Minn.1989); *Aase v. Tambrands, Inc.*, No. 68108, slip op. at 3 (Kootenai County, Idaho Aug. 24, 1989); *Eason v. Tambrands, Inc.*, No. 87–11677–A, slip op. at 2 (Dallas County, Texas Nov. 29, 1988); *Remer v. Tampax, Inc.*, No. 578755 (oral decision; only minutes available) (San Diego, County, California May 10, 1989). Only one court has held that a jury could find that Tampax's warning minimized the danger of TSS to tampon users. *Jones v. Tambrands, Inc.*, No. 87–0102, slip op. at 3 (N.D.Iowa Dec. 2, 1988).

Viewing the evidence in the light most favorable to the plaintiffs, the Court finds that no question of fact exists concerning Tampax's compliance with federal regulations. Tampax's warnings meet each of the specific requirements established by the FDA. As mandated by 21 C.F.R.

§ 801.430(c), the tampon package includes an alert statement worded precisely as required by the regulation and in a typeface separate and readily distinguishable from other text appearing on the panel. In addition, Tampax's package insert provides all of the information about TSS required by 21 C.F.R. § 801.430(d). The Court has examined the package insert in light of plaintiffs' arguments and determines that the warnings "so correspond in meaning and clarity with the FDA specifications" as to preclude a finding that defendant did not comply with the regulation. *Meyer v. International Playtex, Inc.*, No. 86–1430, slip op. at 13 (D.N.J.1988). Plaintiffs' argument that the warning minimized the dangers of TSS amounts, in essence, to an argument that the regulations governing tampon labeling should be more detailed.

The Court, therefore, finds that there is no genuine issue of fact concerning Tampax's compliance with federal labeling regulations.

## V. CONCLUSION

Accordingly, based on the foregoing, and upon all the files, records and proceedings in this case,

IT IS ORDERED that

1. Tampax's motion for partial summary judgment is granted; and

2. all plaintiffs' state law claims based on the inadequacy of Tampax's warning are dismissed.