**Marie SLOMAN**

v.

**TAMBRANDS, INC.**

Civ. No. L–92–2549.

United States District Court, D. Maryland.

Sept. 2, 1993.

Jonathan Schochor, Philip C. Federico, Louis G. Close, Jr., and Schochor, Federico & Staton, P.A., Baltimore, MD, and Charles C. Brown, Jr. and Tom Riley, Cedar Rapids, IA, for plaintiff.

John P. Sweeney and Susan C. Durbin, Baltimore, MD, and Roger E. Podesta, New York City, for defendant.

## MEMORANDUM

LEGG, District Judge.

In this civil action removed to this Court by defendant Tambrands pursuant to 28 U.S.C. § 1441 et seq., the Court is called upon to decide the motions for partial summary judgement filed by defendant, Tambrands, Inc. ("Tampax") with respect to (i) federal preemption of plaintiff's failure to warn claim and (ii) punitive damages. For the reasons set forth below, the Court will, by separate order, GRANT both motions for partial summary judgement.

## I. FACTS AND PROCEDURE

Plaintiff Marie Sloman used tampons regularly for over ten years. (Sloman Dep. at 44). "On Thursday, April 12, 1990, the Plaintiff (who was 27 years of age), began her monthly menstrual flow and utilized 'tampax' tampons for absorption of menstrual flow." (Complaint ¶ 5).

Plaintiff alleges that, on April 15, 1990, she "developed signs and symptoms which included, but were not limited to, dull, aching pain, weakness, low back pain, fatigue, and diarrhea." (Complaint ¶ 5). On Monday, April 16, 1990, plaintiff's condition worsened, and she was taken to Francis Scott Key Medical Center where she required emergency hospitalization for Toxic Shock Syndrome ("TSS"). As a consequence of TSS, both of plaintiff's legs were amputated below the knee. (Complaint ¶ 6). Plaintiff alleges that she developed TSS as a "direct and proximate result of using Defendant's 'tampax' tampons" (Complaint ¶ 6) and that Tampax "failed to adequately, properly and fully warn her" of the dangers of TSS and thus caused her to contract TSS. (Complaint ¶ 26).

Plaintiff filed a five-count complaint in Baltimore City Circuit Court on August 7, 1992, stating claims against Tampax for (i) negligence; (ii) breach of express and implied warranty; (iii) strict product liability in tort; (iv) failure to warn; and (v) punitive damages. The case was removed to this Court on September 10, 1992.

## II. DISCUSSION

█ Defendant Tampax contends, and plaintiff concedes (Plaintiff's Opposition at 1), that the tampon labeling regulation promulgated by the Food and Drug Administration ("FDA") expressly preempts plaintiff's state law failure to warn claims in Counts I [1], IV,

---

1. In plaintiff's negligence claim, Count I, she claims defendant was negligent with respect to failing to warn customers and failing to test, design, and manufacture tampons safely. (Complaint ¶ 10). The Court will only discuss the

and V.[2] Defendant alleges, that because its warning label complied with federal regulations, plaintiff has no claim. Plaintiff counters that there are two material issues of disputed fact such that summary judgement can not be granted: (i) whether plaintiff has established a genuine issue concerning Tampax's compliance with the federal regulation and (ii) whether plaintiff's claims concerning defendant's advertisements are preempted by federal regulation.

portion of Count I that is based on defendant's alleged failure to warn.

2. At least seventeen courts have held that federal labeling requirements for tampons preempt state law warning claims. This Court agrees with those courts. *See Moore v. Kimberly–Clark Corp.,* 867 F.2d 243 (5th Cir.1989); *LaVetter v. International Playtex, Inc.,* 706 F.Supp. 722 (D.Ariz. 1988); *Edmondson v. International Playtex, Inc.,* 678 F.Supp. 1571 (N.D.Ga.1987); *Rinehart v. International Playtex, Inc.,* 688 F.Supp. 475 (S.D.Ind.1988); *Lindquist v. Tambrands, Inc.,* 721 F.Supp. 1058 (D.Minn.1989); *Jones v. Tambrands, Inc.,* No. C0870102 (N.D.Iowa, Dec. 5, 1988); *Stucker v. International Playtex, Inc.,* No. C–87–0440–L(B) (W.D.Ky. Feb. 26, 1988) (appeal dismissed for lack of appellate jurisdiction Jan. 24, 1989); *Cornelison v. Tambrands, Inc.,* 710 F.Supp. 706 (D.Minn.1989); *Needham v. International Playtex, Inc.,* No. 87–152 (E.D.Ky. Oct. 25, 1988); *Briggs v. International Playtex, Inc.,* No. 86–C–540–E (N.D.Ok. Apr. 7, 1988); *Gilbert v. Kimberly–Clark Corp.,* No. 87–C–470–E (N.D.Ok. Nov. 4, 1988); *Stewart v. International Playtex, Inc.,* 672 F.Supp. 907 (D.S.C.1987); *Remer v. Tampax, Inc.,* No. 578755 (San Diego County Superior Court, California May 10, 1989); *Aase v. Tambrands, Inc.,* No. 68108 (Kootenai County District Court, Idaho Aug. 24, 1989); *Craig v. Kimberly–Clark Corp.,* No. 86–2–14780–2 (Kings County Superior Court, Washington Sept. 15, 1988); and *Berger v. Johnson & Johnson Products, Inc.,* No. 86–2–01249–3 (Yakima County Superior Court, Washington Mar. 14, 1989).

The single court which held that federal labeling requirements do not preempt state law claims was also the first court to have confronted the question, *Musatko v. International Playtex, Inc.,* No. 85–C–1540, slip op. (E.D.Wis. May 14, 1987). The rationale of *Musatko,* that the FDA's TSS warning regulation do not rise to the level of a "requirement" with the meaning of section 521(a), has not been accepted by any other court.

3. The preclusive effect of such label and other requirements is discussed in 21 U.S.C. § 360k:

(a) General Rule

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with

Tampons are regulated as medical devices by the 1976 Medical Device Amendments, (21 U.S.C. § 360c) to the Federal Food, Drug & Cosmetics Act of 1938, which expressly preempts any different or additional state regulation of medical devices, including label regulations.[3] The Amendments and the regulations, specifically 21 C.F.R. § 801.430, expressly confer upon the FDA the exclusive authority to establish labeling standard for tampons.[4]

respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement available under this chapter to the device, and

(2) which related to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

4. On June 22, 1982, the FDA adopted 21 C.F.R. § 801.430, entitled "**User labeling for menstrual tampons.**" It states as follows:

(a) This section applies to scented or scented deodorized menstrual tampons as identified in § 884.5460 and unscented menstrual tampons as identified in § 884.5470 of this chapter.

(b) Available data show that toxic shock syndrome (TSS), a rare but serious and sometimes fatal disease, is associated with the use of menstrual tampons. To protect the public and to minimize the serious adverse effects of TSS, menstrual tampons shall be labeled as set forth in paragraphs (c) and (d) of this section.

(c) If the information specified in paragraph (d) of this section is to be included as a package insert, the following alert statement shall appear prominent and legible on the package Label: ATTENTION: Tampons are associated with Toxic Shock Syndrome (TSS). TSS is a rare but serious disease that may cause death. Read and save the enclosed information.

(d) The consumer information required by the section shall appear prominently and legible, in a package insert or on the package, in terms understandable by the layperson and shall include statements concerning:

(1)(i) Warning signs of TSS e.g., sudden fever (usually 102 or more) and vomiting, diarrhea, fainting or near fainting when standing up, dizziness, or a rash that looks like a sunburn;

(ii) What to do if these or other signs of TSS appear, including the need to remove the tampon at once and seek medical attention immediately.

(2) The risk of TSS to all women using tampons during their menstrual period, especially the reported higher risk to women under 30 years of age and teenage girls, the estimated incidence of TSS of 6 to 17 per 100,000 menstruating women and girls per year, and the risk of death from contracting TSS;

### A. Compliance with Federal Regulations

■ Plaintiff is correct in her assertion that summary judgement is not automatically granted when federal law preempts state claims.[5] In the case at bar, defendant must demonstrate that, as a matter of law, its labels and inserts complied with the appropriate federal regulations for tampon safety warnings cited in footnote 4 of this opinion. The Court concludes that defendant successfully demonstrated that it complied with the appropriate federal regulations.

"Since 1982, more than 25 billion Tampax tampons have been manufactured and sold without any suggestion by the FDA of lack of compliance." (Clayton L. Thomas Aff. ¶ 6). At least four courts have granted summary judgment in favor of defendant on the issue of compliance after considering the precise warning at issue here. *See Lindquist v. Tambrands, Inc.*, 721 F.Supp. 1058 (D.Minn. 1989); *Cornelison v. Tambrands, Inc.*, 710 F.Supp. 706, 709 (D.Minn.1989); *Aase v. Tambrands, Inc.*, No. 68108, slip op. at 3 (Kootenai County, Idaho Aug. 24, 1989); *Jones v. Tambrands, Inc.*, No. C0870102 (N.D.Iowa, Dec. 5, 1988).

Tampax's warning complies with each of the specific requirements established by the FDA. As mandated by 21 C.F.R. § 801.-430(c), the tampon package includes an alert statement worded precisely as required by the regulation, and Tampax's insert provides all the information about TSS required by 21 C.F.R. § 801.430(d). The Court therefore finds that there is no genuine issue of fact concerning Tampax's compliance with federal labeling regulations.

Plaintiff asserts, however, that Tampax's package warning does not comply with 21 U.S.C. § 352(c) because the label is not conspicuous, likely to be read, or likely to be understood.[6] In *Beecher v. Tambrands, Inc.*, Civ. No. 3–90–639 (D.Minn. Nov. 19, 1992), the court addressed this issue and held that the warning label and insert did not violate § 352(c). This Court agrees.

Ms. Sloman claims that Tambrands violated § 352(c) by placing the TSS alert statement on the back instead of on the front of its Tampax box. (*See* Plaintiff's Opposition at 4). The FDA, however, expressly declined to require that the alert statement appear on any particular panel of the box. (*See* 47 Fed.Reg. 26,987 (1982) ("FDA has concluded that there is no need to require that the alert statement appear in any specific location, thus providing flexibility to manufacturers."). Therefore, Tampax did not violate FDA reg-

(3) The advisability of using tampons with the minimum absorbency needed to control menstrual flow;

(4) Avoiding the risk of getting tampon-associated TSS by not using tampons, and possibly reducing the risk of getting TSS by alternating tampon use with sanitary napkin use during menstrual periods; and

(5) The need to seek medical attention before again using tampons if TSS warning signs have occurred in the past, or if women have any questions about TSS or tampon use.

(e) The statements required by paragraph (e) of this sections shall be prominently and legible placed on the package label of menstrual tampons in conformance with section 502(c) of the Federal Food, Drug, and Cosmetic Act (the act) (unless the menstrual tampons are exempt under paragraph (g) of this section).

(1) Menstrual tampon package labels shall bear one of the following absorbency terms representing the absorbency of the production run, lot, or batch as measured by the test described in paragraph (f)(2) of this section.

(2) The package label shall include an explanation of the ranges of absorbency and a description of how consumers can use a range of absorbency, and its corresponding absorbency term, to make comparisons of absorbency of tampons to allow selection of the tampon with the minimum absorbency needed to control menstrual flow in order to reduce the risk of contracting TSS....

5. Under Fed.R.Civ.P. 56(c), summary judgement should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law."

6. 21 U.S.C. § 352(c) states:

**Prominence of information on label.** If any word, statement, or other information required by or under authority of this act to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

ulations by placing the TSS alert statement on the back of its box.

Plaintiff's contention that, because the bulk of the alert statement is provided in an insert it is inconspicuous is also inaccurate. The FDA permits manufacturers to include this information in a package insert rather than on the exterior of the package. *See* 21 C.F.R. § 801.430(c). Plaintiff also claims that the alert statement violates § 352(c) because the insert states "If you are using TAMPAX tampons for the first time, please read these directions carefully." Because Marie Sloman was not a first time user, she argues that this statement would have induced her to ignore the alert statement provided. This statement, however, appears on the opposite side of the insert from the TSS alert statement and the insert is folded so that the consumer sees the alert statement first. (Clayton L. Thomas Aff. ¶ 9). Thus, plaintiff's claim has no merit.

Plaintiff also alleges that she was not specifically warned "that toxic shock syndrome is something that one has to worry about beyond her first use of the product." (Plaintiff's Opposition at 5). The FDA regulations, however, do not require this type of warning and a state law requiring this type of warning would be preempted by federal law because 21 U.S.C. § 360k provides that:

> no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement which is different from, or in addition to, any requirement available under this chapter to the device.

Finally, plaintiff claims that the word "Attention" before the TSS warning on the Tampax package is not strong enough to alert consumers. (*See* Kenneth Laugherty Aff. ¶ 3). FDA regulation 21 C.F.R. § 801.430(c) explicitly states, however, that the word "Attention" should be placed before the warning. Therefore, once again, Tampax complied with FDA requirements.

Viewing the evidence in a light most favorable to the plaintiff, the Court finds that no question of fact exists concerning Tampax's compliance with federal regulations. Tampax's warning met each of the specific requirements established by the FDA. The Court has examined the package and insert in light of plaintiff's arguments and concludes that the warnings "so correspond in meaning and clarity with the FDA specifications" as to preclude a finding that defendant did not comply with the regulation. *Meyer v. International Playtex, Inc.,* 724 F.Supp. 288, 294 (D.N.J.1988). The Court therefore finds that there is no genuine issue of fact concerning Tampax's compliance with federal labeling regulations.

### B. *Defendant's Advertisements*

■ Plaintiff also argues that federal preemption would not apply to a "failure to warn in advertising" claim because the FDA does not specifically regulate advertisements. This theory of recovery, however, was not pled by plaintiff in her complaint. Moreover, even if this theory had been pled by plaintiff, she admits in her Opposition that there is no Maryland authority to buttress her contention. (*See* Plaintiff's Opposition at 8). Therefore, the Court concludes that plaintiff's claim for failure to warn in advertising lacks merit.[7] Thus, the Court finds that no question of fact exists concerning Tampax's warnings or advertisements and therefore will grant summary judgement in favor of defendant regarding Count IV and those portions of Count I that rely upon an alleged failure to warn.

### C. *Punitive Damages—Count V*

Defendant also moves for partial summary judgement on the issue of punitive damage. Since plaintiff's punitive damage claim is based on her allegation that defendant's warning was inadequate, which this Court has determined lacks merit, the Court concludes that plaintiff is not entitled to punitive damages.[8]

---

7. Plaintiff also alleges that Tampax was liable for misrepresenting their product. This issue is unrelated to her claim that Tampax failed to adequately warn her about the dangers of TSS, and the Court will not address this issue.

8. In the alternative, if Plaintiff was entitled to punitive damages, she would have to prove under Maryland law by "clear and convincing evidence" that Tampax acted with "actual malice." *Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d

## D. *Conclusion*

The Court will grant defendant's motions for partial summary judgement with respect to the portion of Count I that is based on federal preemption of state claims, as well as Counts IV and V of plaintiff's complaint.

633, 657, 652 (1992). Since defendant successfully proved that it complied with federal regulations, the Court concludes that Tampax did not act with malice in its TSS warning and thus plaintiff is not entitled to punitive damages.